STATE v. W. R. BROWN.

*Indictment -- Larceny -- Evidence -- Witness.*

1. It is error for a Court to submit a question to the jury upon which there is no evidence.

2. A defendant in a criminal action, who introduces a witness in his behalf, does not vouch for his truthfulness and it is no evidence of the defendant's guilt if such witness swear falsely.

3. Facts brought out in a cross-examination of such witness for the purpose of impeaching him can have *that effect only* and cannot have the further effect of substantive evidence of the defendant's guilt.

4 It is the duty of a jury to reconcile conflicting testimony, if possible ; *Therefore,* where in the Court below the evidence conflicted and His Honor in his charge assumed the falsity of the evidence of a witness for the defence and directed the jury to inquire only if such witness had sworn falsely ; *Held,* to be error.

(*Luther* v. *Skeen,* 8 Jones, 356 ; *State* v. *Oscar,* 7 Jones, 305 ; *State* v. *Johnson,* 1 Wmst. 238 ; *State* v. *Smith,* 2 Ire. 402, cited and approved.)

INDICTMENT for Larceny, tried at Fall Term, 1876, of BEAUFORT Superior Court, before *Moore, J.*

The defendant was charged with stealing seed cotton belonging to one Henry R. Woodard. It appeared from the evidence of Woodard and one Jackson, that the day after the cotton was lost, Woodard the prosecutor traced seed cotton along a private path leading from his house to that of defendant, up to 150 yards of defendant's house. That he then procured a search warrant and with an officer and several other persons, went to defendant's house and found him there.

The officer stated to defendant that he had a warrant and wished to search his house. He replied, "you can do so, I have no cotton here." Search was then made, but no cotton found in house or loft.

STATE *v.* BROWN.

They then went to defendant's barn and found in the loft thereof a pile of cotton covered with a bed quilt and secreted behind some fodder.

Lerena Young testified for defendant, that about the time the cotton was stolen, she was at defendant's house and while there was requested by defendant's wife to hide some cotton for her, so that her husband could not get it, and that she covered the cotton with a bed quilt and fodder.

On cross-examination she stated that the cotton secreted as aforesaid by her was in the loft of the house and not in the barn, and that she did not go to the barn at all. She did not hear the testimony of the other witnesses as they were separated.

His Honor in charging the jury said, " that when a defendant puts a witness on the stand it was a declaration on his part that the witness was a truthful one. That when a defendant attempts to manufacture or fabricate testimony it was evidence of guilt, and then called attention to the testimony of Lerena Young in connection with that of the other witnesses. She located the cotton in the house loft, while all the other witnesses testified that the cotton was found covered with a bed quilt and fodder in the barn, and that there was none in the house loft."

His Honor then said, " if upon consideration of the whole case the jury were satisfied that her testimony was false and that defendant knew it to be false, then it was a circumstance tending to establish the guilt of defendant, the weight of which was for the jury to consider and not for the Court." Defendant excepted. Verdict of guilty. Judgment. Appeal by defendant.

*Attorney General,* for the State.

*Messrs. George H. Brown, Jr.* and *J. E. Shepherd,* for the defendant.

BYNUM, J.   His Honor charged the jury: " That where a
defendant puts a witness on the stand it is a declaration
upon his part that the witness is a truthful one; that when
a defendant attempts to manufacture or fabricate testimony
it is evidence of guilt." He then directs the attention of
the jury to the discrepancy between the testimony of the
prosecutor and that of Lerena Young, a witness for the de-
fendant, and concludes his charge thus: " If upon considera-
tion of the whole case the jury are satisfied that her
testimony was false and that the defendant knew it to be
false, then it was a ' circumstance tending to establish the
guilt of the defendant, the weight of which was for the jury
and not for the Court."

The proposition of law as thus laid down by His Honor
cannot be admitted to be true without some qualification;
but for the purposes of this case we will assume it to be true,
and still the defendant is entitled to a *venire de novo* for the
reason that the evidence in the case did not warrant such a
charge. There was no evidence whatever that the testimony
of Lerena Young was false within the knowledge and by
the procurement of the defendant. It was therefore error
in His Honor to submit to the jury a question upon which
there was no evidence; and doubtless the verdict of the
jury turned in some degree upon his instructions upon this
point.

We might stop here as the defendant is clearly entitled
to another trial for the error just assigned.

But we are of opinion that His Honor erred in another
particular material to the rights of the defendant, which
error may be repeated on the next trial, and it is therefore
not improper to notice it here.

As we understand the charge, and as we think the jury
understood it, clearly so in the first part of it, it assumes
that where a defendant in a criminal action introduces a
witness in his behalf he thereby vouches for his truthful-

ness, and if that witness swears falsely it is evidence of guilt, upon the ground that such false testimony was given by the procurement of the party introducing the witness.

This proposition we think cannot be maintained, and least of all, where as in our case the alleged falsehood was brought out not by the defendant but upon the cross-examination of the witness by the State.

The rule of evidence as laid down by Greenleaf is this: "When a party offers a witness in proof of his cause he thereby in general represents him as worthy of belief. He is presumed to know the character of the witnesses he adduces; and having thus presented them to the Court, the law will not permit the party afterwards to impeach their general reputation for truth or to impugn their credibility by general evidence tending to show them to be unworthy of belief." 1 Greenl. Ev. 442. It is thus seen that the rule extends only so far as to forbid the party introducing the witness from impeaching his general character for truth. By introducing the witness the party represents him to be truthful but does not warrant him to be so, under the penalty that if he swears falsely it shall be evidence against the defendant upon the issue on trial. A party cannot foresee that his witness will swear falsely or prevent him from doing so. The only effect of such evidence is to discredit the witness. The true rule we take to be this, viz; facts brought out on cross-examination for the purpose of impeaching the testimony of the witness can have *that* effect only, and cannot have the further effect of *substantive* evidence of the guilt of the defendant.

It was therefore error to allow the facts so brought out on the cross-examination to go to the jury for a different purpose than that of impeaching the credibility of the witness. *Luther* v. *Skeen*, 8 Jones, 356; *State* v. *Oscar*, 7 Jones,

305.   But in justice to the witness and in justice to the defendant also, the evidence should have been presented to the jury in another view, to-wit; they should have been told that it was their duty first to reconcile the testimony of the State and defendant if possible.   If that could not be done, then they should ascertain which party, if either, had sworn falsely &c.   Whereas the charge *assumes* the falsehood of the testimony and directs the jury to inquire only whether Lerena Young had sworn falsely &c.   This witness testified on cross-examination that she hid the cotton in the loft of the dwelling house ; the State's witnesses swore that they found the cotton hid in the barn loft.   So far as the case shows it might well be that after Lerena Young hid the cotton, it was removed to the barn by the wife of the defendant, or even by the defendant himself.   No motive of favoring the defendant could have influenced the witness to locate the cotton in the house, because finding the cotton in the dwelling house in the exclusive occupation of the defendant and wife, would have been evidence tending to establish the defendant's guilt, while finding it in a barn, not so immediately in the occupation of the defendant, is slighter evidence of guilt.   *State* v. *Johnson*, 1 Winst., 238 ; *State* v. *Smith*, 2 Ire. 402.

The woman's testimony, if false, is more damaging to the defendant than if it were true, but seems to point more to the guilt of the wife and witness than to the guilt of the defendant.

At all events it is clear from the case, as stated to us, that the evidence of the woman did not favor the defendant and that she had no apparent motive to favor him."

It was therefore the more important that the jury should have been instructed to reconcile if possible this apparent conflict of testimony between the State and defendant without imputing corruption to the witness assailed.   It does not appear to us indeed much to affect the merits of the case

whether the cotton was found in the house loft or the barn loft. But for the errors pointed out there must be a new trial.

